[No. 19784.   Department Two.   October 25, 1926.]

A. W. HAYNES *et al.*, *Appellants*, v. CENTRAL BUSINESS PROPERTY COMPANY *et al.*, *Respondents*, W. H. MATTHEWS *et al.*, *Interveners*.[1]

[1] CORPORATIONS (12)—ORGANIZATION—ATTACKING VALIDITY.   A unit holder in an alleged common law trust cannot maintain an action for the appointment of a receiver on the ground that the trust is illegally exercising the powers of a corporation; since the state alone can complain thereof.

[2] FRAUD (11)—ACTIONS—WAIVER OF RIGHT.   A person who acquires in the open market a unit in a common law trust long after the fraud was committed cannot question the validity of the original transaction.

[3] FRAUD (11-1)—ACTIONS—DEFENSES.   Fraud in the transfer of property in trust and the sale of units in the unitization cannot be claimed by a unit holder acquiring his interests after the alleged fraud was committed, where there were no fiduciary relations with the purchaser and it did not act as agent of the unit holders.

[1]Reported in 249 Pac. 1057.

[4] CORPORATIONS (193)—ACTIONS—CAPACITY TO SUE AND BE SUED.
A corporation does not cease to exist by reasons of being bank-
rupt and having its name stricken from the records in the sec-
retary of state's office, where it has the right to be reinstated, and
can be sued, although, under Rem. Comp. Stat., § 3842, it cannot
maintain an action.

[5] RECEIVERS (11)—APPOINTMENT—DEFENSES. The violation of a
trust deed by the payment of an unauthorized commission for
managing the property, does not form the basis for the appoint-
ment of a receiver in a suit brought by a unit holder; since he
can recover at law the amount due him on his unit.

Appeal from a judgment of the superior court for
Spokane county, Witt, J., entered September 25, 1925,
dismissing an action for the appointment of a receiver,
after a hearing to the court. Affirmed.

*Merritt & Curtiss* and *C. C. Lantry,* for appellants.

*Don F. Kizer, Graves, Kizer & Graves, Danson,
Lowe & Danson, Hamblen & Gilbert,* and *Lund &
Dodds,* for respondent Central Business Property
Company.

*Wakefield & Witherspoon (Harry T. Davenport,* of
counsel), for respondent Union Trust Company of
Spokane.

MAIN, J.—By this action, the plaintiff sought the
appointment of a receiver for, and the sale of, a busi-
ness property. The trial to the court without a jury
resulted in a judgment of dismissal, from which the
plaintiff appeals.

Some years ago, the Trustee Company, a corporation,
was the owner of five properties in the city of Spokane,
referred to respectively as the Wolverton Building,
the Hyde Building, the Eagle Building, the Temple
Court Building, and the Empire State Building. That
company transferred these properties to the Union
Trust Company, a corporation, in trust. The present

action involves the Wolverton Building only, but a like suit was brought as to each of the other properties.

The trust deeds in each case provided for the creation of units which would be sold by an instrument in the nature of an investment bond. After the properties were transferred to the Union Trust Company, the Trustee Company sold bonds or units covering each property. The units were of the par value of one thousand dollars. The amount of the unitization of the buildings was as follows: Wolverton two hundred fifty thousand dollars; Hyde, six hundred thousand dollars; Eagle, three hundred thousand dollars; Temple Court, four hundred ninety-one thousand two hundred dollars; and Empire State, four hundred forty-three thousand nine hundred dollars. There was a provision by which these bonds could be divided into ten equal parts and sold in that manner.

One-tenth of a unit in the Wolverton Building was purchased by N. J. Dolph, the certificate for which recites that it was issued on the first day of June, 1915. On March 12, 1925, Dolph assigned this one-tenth of a unit of the par value of one hundred dollars to the appellant A. W. Haynes. The appellant also acquired one-tenth of a unit in each of the other properties, with the exception of one, and in that one he acquired two-tenths, making him in all six hundred dollars worth of units out of a total unitization on the five buildings of two million eighty-five thousand one hundred dollars. After acquiring one-tenth of a unit in the Wolverton Building, he brought the present action and, as stated, brought separate like actions with reference to each of the other properties. No other unit holder has joined with him in the action. It will be assumed for the purposes of this case only, but expressly not decided, that the appellant can stand as the representative of a class.

[1] The appellant's first position is that the association of unit holders as created by the trust deeds is a common law trust and illegal. There are two reasons why this position cannot be sustained, the first of which is that, if a common law trust exists and is assuming to exercise the powers and functions of a corporation, the state is the only one that can complain. *Frost v. Puget Sound Realty Associates,* 57 Wash. 629, 107 Pac. 1029. In the case of *State ex rel, Range v. Hinkle,* 126 Wash. 581, 219 Pac. 41, the state resisted the application of the relator for a certificate entitling it to do business as a common law trust, and in *State ex rel. Colvin v. Paine,* 137 Wash. 566, 243 Pac. 2, 247 Pac. 476, the action was brought on behalf of the state.

[2] The other reason why the appellant cannot complain is that, having acquired in the open market, years after the fraud is alleged to have been committed, by assignment one-tenth of a unit, he cannot now question the validity of the original transaction. In *Washington Co-operative Egg & Poultry Ass'n v. Taylor,* 122 Wash. 466, 210 Pac. 806, it was held that, in an action upon a contract, the defendant was not entitled to show that, at the time the contract was entered into, the capital stock of the corporation which was bringing the action had not been subscribed and paid for as required by statute, because, having made a contract with the plaintiff, he was in no position to contend that it was not entitled to engage in business. It is true that that case was with reference to a corporation, but there is no reason why the same rule should not apply in the present case.

[3] The second contention is that there was fraud in the transfer of the property in trust and the sale of the units in that the unitization was greater than the cost of the properties to the Trustee Company. At the time the transfer was made to the Union Trust

Company, the Trustee Company was then the owner. The units or bonds were subsequently sold. At the time of the transfer, there was no fiduciary relation existing in the particular unit holder and the Trustee Company. At the time it purchased the buildings, it did not act as the agent of the unit holders. In addition to this, the appellant acquired his one-tenth of a unit by assignment from Dolph years after the fraud is alleged to have been committed. He had no transaction with the Trustee Company, and in the transfer of the bond or unit there is no attempt to assign to the appellant any action that Dolph may have had on account of fraud.

[4]    The third contention is that the Central Business Property Company, which company was in possession of the properties and managing the same at the time the actions were brought, was not the lawful successor to the Trustee Company and had no right to the possession and management of the properties. This contention is based upon the assumption that the Trustee Company had ceased to exist. There was a clause in the trust deeds by which it was provided that the properties must be sold "as an entirety in one lot or parcel prior to the termination of the existence of The Trustee Company, but not more than one year prior thereto." The Trustee Company in February, 1918, was adjudged a bankrupt. On July 1, 1921, its name was stricken from the records in the office of the secretary of state for failure to pay annual license fees. It is by reason of the bankruptcy and the striking of the name of the corporation from the records in the office of the secretary of state that the appellant claims that the Trustee Company has ceased to exist and the time has arrived when under the trust deed the properties must be sold. Even though the corporation had

become bankrupt and its name stricken from the records in the secretary of state's office, it had not ceased to exist as a corporation. In *State ex rel. Bowen v. Superior Court*, 135 Wash. 315, 237 Pac. 722, it was said:

"Under the present statute, there is no such thing as a dissolution of the corporation by the secretary of state. While the name of the relator has been stricken, it still has the right to be reinstated. Unquestionably, under § 3842, Rem. Comp. Stat., the relator would not be permitted to maintain an action, but there is no reason why it may not be sued and defend. So long as it may reinstate itself, it is not dead, but its powers are merely circumscribed."

[5] The last ground upon which the appellant relies for relief is that the trust has been violated in putting the Central Business Property Company in possession of the properties and allowing it three per cent of the gross income for its services as manager. The trust deed provided that the registered owners of not less than sixty-seven per cent of the units at any time outstanding might at their option remove the Trustee Company and appoint a successor. In appointing the Central Business Property Company as the manager of the properties, this provision of the deed was complied with, more than sixty-seven per cent of the registered owners of units in each building authorizing the transfer of management. It is said, however, that there is no provision in the trust deed authorizing the payment of the three per cent of the gross income for management. The Trustee Company, under the deeds, was not to receive any compensation. Whether the required percentage of the unit holders, after authorizing a change of management, could further provide for compensation when such is not mentioned in the trust deed it is not neces-

sary here to determine, because if the trust deed in this respect was violated, it would not furnish the basis for the appointment of a receiver and a sale of the properties at the instance of the appellant. If he is entitled on his bond or unit to more than he has been paid, he has a right of action at law to recover the same. In the concurring opinion in *Frost v. Puget Sound Realty Associates, supra,* it was said:

"Conceding, but not deciding, that the company wrongfully paid commissions out of the subscribers' money, it does not appear that any other wrong was done the bondholders. For this the subscriber would have his remedy at law and, if so entitled, could recover without the aid of a receivership. Receivers of going concerns should not be appointed at the instance of a minority of stock or bondholders, unless it clearly appears that the rights of all parties will be best served by such procedure."

It is clear that the appellant has no right to force a receivership and sale of the properties involved which might and probably would result in great damage and loss to the other unit holders.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and MACKINTOSH, JJ., concur.