[No. 27840. Department One.   March 25, 1940.]

NATIONAL GROCERY COMPANY, *Appellant*, v. KOTZEBUE FUR & TRADING COMPANY, *Defendant*, MRS. T. A. VERNON, *as Administratrix of the Estate of E. E. Patterson, Deceased, Respondent.*[1]

[1]Reported in 100 P. (2d) 408.

*Jones & Bronson* and *Story Birdseye,* for appellant.
*Trefethen, Porterfield & Trefethen,* for respondent.
*Glenn R. Madison, amicus curiae.*

SIMPSON, J.—Plaintiff obtained a judgment against defendant Kotzebue Fur & Trading Company August 14, 1937. June 1, 1937, a store and its contents in Kotzebue, Alaska, were completely destroyed by fire. Insurance companies which had issued policies thereon adjusted the loss and agreed to pay to those who had

caused the insurance to be effected in the sum of $5,500, less costs incurred in investigating the claim. Plaintiff, pursuing the theory that the Kotzebue Fur & Trading Company was the actual owner of the property lost in the fire, garnished the insurance companies. By stipulation entered into between plaintiff, the insurers, and the administratrix of the estate of E. E. Patterson, deceased (the latter individual having been instrumental in procuring the insurance), two thousand dollars was paid into the registry of the court to await the result of the garnishment action.

Thereafter, the administratrix, on behalf of the estate, filed a complaint in intervention, in which allegations were made to the effect that the property destroyed by fire belonged to the estate of E. E. Patterson, deceased, that the Kotzebue Fur & Trading Company had no interest therein, and that the judgment obtained by plaintiff against that corporation was invalid.

Plaintiff answered, denying the allegations of the complaint in intervention, and alleged, among other affirmative defenses, that intervener was estopped to deny the existence of the Kotzebue Fur & Trading Company, that it was still doing business at the time of the fire, or that it was obligated to pay for the merchandise the sale of which formed the basis for plaintiff's judgment. The reply put in issue the affirmative allegations contained in the answer.

The trial was had to the court, sitting without a jury. At its conclusion, findings of fact and conclusions of law were made. Thereafter, the court entered judgment in favor of intervener.

We shall refer to the Kotzebue Fur & Trading Company as defendant, and to the E. E. Patterson estate as respondent.

In presenting its appeal, the National Grocery Company urges error on the part of the trial court in hold-

ing that the judgment which it had obtained against the Kotzebue Fur & Trading Company August 14, 1937, was void, and in holding that the two thousand dollars paid into the registry of the court was the property of intervener.

The salient facts, so far as uncontroverted, are these: For many years prior to 1932, appellant, a wholesale grocery company, sold goods to defendant, a Washington corporation. The business of defendant consisted of several fur trading stores located in and around Kotzebue, Alaska. Shares in defendant corporation were divided forty-nine per cent to Thomas Berryman, forty-nine per cent to E. E. Patterson, and two per cent to Mrs. Patterson.

August 5, 1932, difficulties between Berryman and Patterson culminated in the execution of a written agreement entered into between the three shareholders, which provided for the distribution of the assets of the corporation between the two principal shareholders and for the payment by them of all of the corporation's existing debts. The agreement further provided that, after the distribution and payment of debts had been effected, the corporation should be dissolved by Patterson, but that he should have the right then to reincorporate, employing the same corporate appellation.

Shortly thereafter, August 10, 1932, Patterson purchased from appellant the supplies which form the basis for its present claim against defendant. Partial payment on this account was made by Patterson later in the same month.

Mr. Patterson died December 8, 1932, and his widow was appointed executrix of his estate by the superior court of King county. Notice to creditors of the estate was published December 31, 1932. March 20, 1933, Mrs. Patterson filed an inventory of the property be-

longing to the estate, including therein 37,500 shares of Kotzebue Fur & Trading Company stock. These shares were appraised February 2, 1934, at a value of $19,000.

Appellant did not file a claim against the Patterson estate. Mrs. Patterson, continuing the operation of the Alaska stores which had been allocated to her husband under the August 5, 1932, agreement, made the following payments to appellant: May, 1933, $500; March 4, 1934, $200; and April 9, 1934, $237.15.

July 9, 1934, Mrs. Patterson, in her capacity as executrix, petitioned the superior court of King county for permission to incorporate the estate in Alaska. The court granted her petition and the corporation was formed, but abandoned before the property belonging to the estate was turned over to it.

During this period of time, Mrs. Patterson secured insurance upon the Alaska properties, the policies purporting to insure the properties of the new company, Kotzebue Trading Company.

Mrs. Patterson resigned as executrix March 29, 1937. Her daughter, Mrs. Vernon, was appointed to succeed her, and thereafter continued to operate the stores.

The property at Kotzebue which was destroyed by the fire June 1, 1937, consisted of one of the buildings allotted to Patterson under the provisions of the distribution agreement, and stocks of merchandise acquired by Mrs. Patterson and Mrs. Vernon in the operation of the stores during the years 1935 and 1936.

At the conclusion of the trial, the court stated:

"This merchandise was sold to this corporation. This corporation apparently continued to do business. That is, this executrix carried on that business in Alaska. She was not sufficiently particular, and if there is any possibility of an estoppel arising, this would be a case where it would arise. Of course, this is an insolvent estate. Creditors are not bound by estoppel of the

deceased. But this is not the estoppel of the deceased. This is the estoppel of that executrix, if any at all.

"I am forced to the opinion that the deceased and his successor, the widow, did not completely comply with this agreement and abolish this corporation. They just used it after the two individuals divided the assets—made a hundred per cent property dividend, because that is what they did. They used it and ought to be bound by it."

■ The question first to be considered relates to the validity of the judgment which appellant obtained against defendant. Pivotal in the determination of this issue is the effect to be ascribed to certain statutory provisions relating to the consequences attendant upon failure by a corporation to pay its annual license fees.

It was provided by Laws of 1923, chapter 144, p. 465, § 5, that:

"Every corporation whose name has been, or shall hereafter be, stricken from the records of the office of the secretary of state in pursuance of law for failure to pay its annual license fee for two years, is hereby authorized and permitted to apply to the secretary of state for reinstatement at any time within three years after its name has been stricken from the records of the office of the secretary of state . . . "

This section operated in conjunction with Laws of 1909, Ex. Ses., chapter 19, p. 57, § 4, which provided:

"If, however, within the period named within which a corporation may make application to be reinstated such corporation shall not have made such application, the Secretary of State shall enter upon his records a notation that such corporation is dissolved, and it shall thereupon be dissolved and the trustees of such corporation shall hold the title to the property of the corporation for the benefit of its stockholders and creditors to be disposed of under appropriate court proceedings."

These statutes remained in force until repealed and superseded by the provisions of the Laws of 1937, chapter 70, p. 238 (Rem. Rev. Stat. (Sup.), § 3836-1 [P. C. § 4656-51] *et seq.*), which became the law of this state March 13, 1937.

Defendant corporation became delinquent as of July 1, 1933, for failure to pay its license fees for the ensuing year. Under provisions of existing law, its name was stricken from the records of the secretary of state July 1, 1935. Had it not been for the interposition of chapter 70 of the Laws of 1937, *supra,* it would not have been noted as dissolved upon the records of the secretary of state until July 1, 1938. Under § 13 of that act, p. 245, however, the notation of dissolution was effected July 1, 1937.

Section 13 reads as follows:

"In the event that any corporation, which has failed to pay fees provided for by existing laws for a period of three consecutive years, shall fail to pay said fees in full on or before July 1, 1937, it shall be the duty of the secretary of state to enter upon his records a notation that such corporation is dissolved and said corporation shall thereupon be dissolved. . . . " Rem. Rev. Stat. (Sup.), § 3836-13 [P. C. § 4656-63].

The above-quoted section is modified by the following proviso in § 14 of the same act, p. 246:

*"Provided, however,* That any corporation which may have been heretofore stricken or dissolved or which may hereafter be dissolved by the secretary of state for non-payment of fees under existing laws or this chapter is hereby given the privilege of becoming reinstated and having its corporate license restored by applying to the secretary of state for such reinstatement at any time within ten (10) years after such corporation may have been or may be stricken or dissolved, . . . " Rem. Rev. Stat. (Sup.), § 3836-14 [P. C. § 4656-64].

It was the holding of the trial court that application of these sections compelled the conclusion that the judgment entered against defendant corporation August 14, 1937, was void upon the basis that, after the notation of dissolution by the secretary of state July 1, 1937, defendant corporation could no longer be sued, that any action then pending must necessarily have abated, and the court entertaining proceedings against it was thereby divested of its jurisdiction.

Appellant contends that defendant's failure to pay license fees, and the acts of the secretary of state, both under the 1937 act and the provisions previously in force, did not, in fact, effect the actual dissolution of the corporation, but simply placed it in a state of suspended animation for the duration of the time allowed by the 1937 act for reinstatement, and that it was susceptible of suit at any time within that period.

It is clear that a judgment secured against a corporation after its dissolution is invalid. *State ex rel. National Surety Co. v. Superior Court,* 180 Wash. 587, 41 P. (2d) 133; *Columbia Building Co. v. National Surety Co.,* 194 Wash. 51, 76 P. (2d) 1027. The issue is narrowed, then, to determination of whether, under the act of 1937, the provision for notation of dissolution on the records of the secretary of state has the effect of dissolving a corporation to the extent that it cannot be sued within the time provided for its reinstatement.

The history of the various acts passed by the legislature providing that corporations be noted upon the records of the secretary of state as "stricken," or "dissolved," and of the many cases decided by this court in which those statutes have been construed, has been exhaustively briefed by both parties to this appeal. We do not, however, feel called upon to discuss or review those statutes or decisions, for the reason that the question now before us has been definitely decided in *State*

*ex rel. Bowen v. Superior Court,* 135 Wash. 315, 237 Pac. 722; *Haynes v. Central Business Property Co.,* 140 Wash. 596, 249 Pac. 1057; and *Globe Const. Co. v. Yost,* 173 Wash. 522, 23 P. (2d) 892.

In the case last cited, we held as follows:

"Appellant complains of a finding made by the court to the effect that Seattle Conifer Nursery was properly served with process in the original action, by delivery of summons and complaint to Sue Neill Powers, its secretary. Appellant's contention is that, at the time of such service, the corporation was defunct, and that therefore no service could be had upon it; and further, that Sue Neill Powers was not the official secretary, but merely the acting secretary. The evidence discloses that the corporation was stricken from the records of the secretary of state on July 1, 1930, which was prior to the service of process in the former action. In *State ex rel. Bowen v. Superior Court,* 135 Wash. 315, 237 Pac. 722, where a similar contention was made, we held that, while such corporation would not be permitted to maintain an action, it could, nevertheless, be sued and defend. So long as a corporation may reinstate itself, it is not dead, and is, therefore, subject to process and suit. See, also, *Haynes v. Central Business Property Co.,* 140 Wash. 596, 249 Pac. 1057."

Although the act of 1937 dispenses with the procedure whereby the name of the corporation be stricken from the records of the secretary of state, and provides for notation that it be "dissolved" at the inception of the period within which reinstatement is provided for, rather than at the expiration of that period, we are unwilling to hold that the plain rule of the cases to which we have just referred was intended by the legislature to have been abrogated by the 1937 act.

Indisputably, application of § 14 of the act operated to invest defendant corporation with the privilege of becoming reinstated at any time within ten years of the date upon which it was stricken from the records

of the secretary of state, i. e., until July 1, 1945. So long as it retains this privilege, defendant is susceptible of suit and of suffering valid judgment to be entered against it.

It is further contended by respondent that the judgment obtained by appellant against defendant is void because of defects in the service of summons and complaint in that action, and because of the running of the statute of limitations.

Inasmuch as the record shows that the judgment in question went by default, it is obvious that the defense of the statute of limitations was not raised by defendant either by demurrer or by answer. For this reason, we are not inclined to accord further consideration to questions involving the statute of limitations.

Appellant, with regard to its action against defendant corporation, purports to have vested the court with jurisdiction over defendant by filing a summons and complaint February 20, 1937, and by service of process on defendant corporation through the office of the secretary of state, as provided for under Laws of 1923, chapter 39, p. 102, § 1 (Rem. Rev. Stat., § 3817 [P. C. § 4506]), repealed, Laws of 1939, chapter 143, p. 438, § 19 (Rem. Rev. Stat. (Sup.), § 3803-62a), in the event of failure by the corporation to file a list of officers with the county auditor. It is not disputed that defendant had failed to comply with the filing provisions of that act.

The portion of this statute which provides for effecting service through the office of the secretary of state reads as follows:

"If any corporation shall fail to comply with the provisions of this section, service of process against such corporation during the period of such failure may be made by serving duplicate copies upon the secretary of state. Upon such service being made the secretary of state shall forthwith mail one of such duplicate

copies of such process to such corporation at its last known address as shown by the records of his office."

Service upon the secretary of state was effected by appellant April 14, 1937, by forwarding to that official two copies of the summons and complaint through registered mail. It is not denied that these papers were actually received by the secretary of state.

The affidavit of service upon which the order of default was based showed that one copy of the summons and complaint was mailed by the secretary of state to the last known address of the defendant corporation.

Respondent offers two objections to the validity of this procedure: First, that the clause providing for "serving duplicate copies upon the secretary of state," required personal service upon the secretary of state; second, that the statute was not intended to be operative in the situation where, as in the case at bar, the name of the corporation involved had been stricken from the records of the secretary of state.

We have not before had occasion to pass upon the questions raised by these objections. As to the first issue, the manner of service upon the secretary of state, we find nothing in the procedure followed by appellant which is inconsistent with the language of the statute. The legislature did not specifically prescribe personal service, and nothing in the spirit of that act, or the function which it seeks to perform, indicates that its requirements cannot properly be met through service by registered mail.

With reference to respondent's second objection, we hold that the fact that the name of the corporation had been stricken from the records of the secretary of state at the time service was had upon that official, did not prevent adequate service of process from being effected through compliance with the steps outlined by the statute. The provision for the striking of the name of a

corporation delinquent in the payment of its filing fees does not suggest the conclusion that, after having been stricken, the records of the office of the secretary of state no longer show the last known address of the corporation involved. The provisions for reinstatement directly rebut respondent's theory on this point. We have already determined that a corporation having the privilege of reinstatement is susceptible of being sued. It is our conclusion that the legislature intended, under situations similar to those which obtain in the instant case, that the corporation in question become subject to the jurisdiction of a proper court through service of process as provided for under this statute.

We accordingly hold that appellant obtained a valid judgment against defendant corporation.

The next question involves determination of whether, for the purposes of this litigation, the moneys received from the insurance company are property of defendant or of respondent estate. It is appellant's contention that the goods were sold, not to Mr. Patterson, but to defendant corporation, and that respondent is estopped to deny that the goods destroyed by fire were property of defendant. In support of its position, appellant introduced the following testimony of its credit manager, relating to a conversation had by him with Mr. and Mrs. Patterson at the time the goods were purchased, August, 1932:

"Q. Did they call at your place of business? A. Yes. Q. What discussion took place between you at that time? . . . A. They both came in and explained to me that they were splitting up with Berryman and they wanted to buy this bill of goods and they wanted it to be shipped in the name of E. E. Patterson for the reason that when it got up there, they didn't want by any chance to have Mr. Berryman get possession of the merchandise, and they asked me to invoice it twice, once against E. E. Patterson so he could lay claim to the

merchandise if they got into an argument, and again to the Kotzebue Fur & Trading Company, that invoice to be sent up there to Mr. Steffen who Mr. Patterson had sent up to take charge of the affairs of the concern. Q. When you say 'that invoice,' to which invoice do you refer? A. Well, we made two invoices, one billed against E. E. Patterson and the other against the Kotzebue Fur & Trading Company, and the Kotzebue Fur & Trading Company invoice is the one that was sent up there. Q. Was that pursuant to your agreement with Patterson? A. Yes. Q. Did you have any conversation at that time about the existence of the corporation or its continued existence? A. Yes. Q. What was the substance of that conversation? . . . A. That the corporate name would be continued by Patterson. Mr. Berryman would operate under his individual name. Q. Was anything said at that time about dissolving the corporation? A. Not to me. I was given to understand that the corporation would be continued by Mr. Patterson. Q. And what were you given to understand as to whether or not this sale was to the corporation? A. Definitely that it was for the account of the corporation. Q. And did you so bill the corporation? A. Yes."

Respondent did not attempt to controvert this testimony directly, but submitted in evidence a copy of the agreement of August 5, 1932, and introduced from an account book kept by Mr. Patterson a page on which was entered a list of goods and their cost. At the top of the page was the date August 12, 1932, and the words "E. E. Patterson to E. D. Steffen." Mr. Steffen, also referred to in the testimony of appellant's credit manager, was at that time Mr. Patterson's agent in Alaska. Testimony was also introduced by respondent to the effect that the merchandise sold by appellant was not stored, upon its arrival in Kotzebue, in a warehouse which was, or had been, property of defendant corporation; that the Kotzebue store operated by Mrs. Patterson, and later by Mrs. Vernon, was known as "Ver-

non's Store," or "E. E. Patterson's Store;" and that checks given by Mr. and Mrs. Patterson in payment on the account were not signed in the name of defendant. It was further shown by respondent that Mrs. Patterson and Mrs. Vernon had purchased from other concerns large quantities of goods during the time they managed the Alaska business.

It is strongly urged by respondent that, conceding appellant's estoppel theory to be one which might successfully be argued in an action to which E. E. Patterson were an adverse party, the estoppel of the deceased cannot be urged against an administratrix who represents creditors. This is true, argues respondent, because where, as in the instant case, the estate is insolvent, there is no privity between the deceased and his administratrix or executrix, the latter, instead, being in privity with creditors of the estate whose claims are to be satisfied, in so far as is possible, out of available assets of the estate. In support of this contention, respondent cites *Thompson v. Hudgens,* 161 S. C. 450, 159 S. E. 807; *Starr v. Estey,* 69 N. H. 619, 45 Atl. 590; and 21 C. J. 1182, § 185.

Appellant meets this argument by pointing out that it does not purport to rest its case upon the estoppel of deceased, but rather upon that of Mrs. Patterson in her capacity as executrix. To bear out this theory, appellant refers again to the testimony of its credit manager, he having stated at the trial that, after discussing the matter with Mrs. Patterson and her attorney, during the time within which creditors were entitled to file claims against the estate, he was assured by them that appellant's claim was against defendant corporation, not against respondent.

Respondent made no attempt to controvert this testimony. Neither did respondent contend that appellant had notice of what were, in fact, the actual terms

of the agreement of August 5, 1932. It is also apparent from the record that respondent made no attempt to explain why defendant corporation was not dissolved by Patterson or by his estate, as specifically provided for under the terms of that agreement.

. Further evidence that Mrs. Patterson, as executrix, did not treat defendant as dissolved and no longer the owner of that portion of the Alaska business which was allocated to her husband, is to be found in the fact that she inventoried as assets of the estate 37,500 shares in defendant corporation, and that she omitted to include in that inventory any of the specific items of real or personal property relating to the Alaska business, including the merchandise upon the sale of which appellant bases its present claim against defendant. Appellant also relies upon the fact that certain correspondence which it received from Mrs. Patterson and Mrs. Vernon, concerning subsequent purchases made by them for the Alaska business, was composed upon stationery bearing the letterhead of defendant corporation. The fact that payments made by Mr. and Mrs. Patterson for the goods purchased August 10, 1932, were by personal checks, rather than by checks drawn upon defendant corporation, is explained by evidence showing that this had been the established practice prior to August, 1932.

We have not, to our knowledge, had previous occasion for considering the application of the doctrine of estoppel in a situation similar to that which obtains in the case at bar. It appears, however, that this problem has already received the careful attention of courts of other jurisdictions. The following cases recognize the principle that an estate may be bound, on grounds of estoppel *in pais,* by conduct of its executor or administrator while acting in his official capacity in dealing with third persons: *Caldwell v. Kimbrough,* 91 Miss.

877, 45 So. 7; *Basen v. Clinton Trust Co.,* 115 N. J. L. 546, 181 Atl. 67; *Franklin Fire Ins. Co. v. Holmes,* 188 Ark. 1053, 69 S. W. (2d) 281; *Thomasson v. Walker,* 168 Va. 247, 190 S. E. 309, 110 A. L. R. 593. See, also, 23 C. J. 1178, § 397. Compare *Beyer v. Bullock,* 56 Wash. 110, 105 Pac. 155, and *Carruthers v. Whitney,* 56 Wash. 327, 105 Pac. 831, 134 Am. St. 1114, wherein we held that an administrator or executor was estopped, because of his conduct while acting in his representative capacity, to assert a personal claim inconsistent with rights maintained by the estate.

We apply this principle to the instant case, and derive therefrom the holding that respondent is estopped to deny, as far as appellant is concerned, that the property lost in the fire June 1, 1937, was property of defendant corporation.

We find the situation in the case at bar to be analogous to that in *Caldwell v. Kimbrough, supra,* wherein the administrator of the mortgagor sought to enjoin the sale of property under a deed of trust. It appears that, after the mortgagee had exercised his option to declare maturity of the entire amount of the deed in trust upon default in payments due on the debt, there was some delay before the mortgagee undertook to have the property sold. The administrator, relying upon a clause in the trust deed which provided that,

" 'In the event maturity of the unpaid portion of the debt is declared, but no sale is actually made, such declaration of maturity shall be held for naught, and the notes hereby secured shall be deemed to mature as provided on their face,' "

contended that, through his delay, mortgagee had lost his right to insist upon immediate payment of the entire unpaid portion; and that, any time before the sale was actually held, the mortgagors had the right to reinstate themselves under the terms of the deed and

prevent subsequent sale of the property by paying in full amounts due on the debt as of the time such tender was made. The record disclosed, however, that the failure to proceed promptly with the sale after the declaration of maturity was at the instance and insistence of the administrator, and occurred through an effort on the mortgagee's part to oblige the administrator by allowing him an opportunity to prevent the sale by payment of the debt in full. In dissolving the injunction which the administrator had obtained in the trial court, the court made these observations:

"Under these conditions, can the administrator defeat the sale by setting up the fact that the mortgagees did not act at once and sell? An executor or administrator, in his capacity as such, and dealing with the matters about which he may lawfully exercise authority, is as much bound by the law of estoppel as if he were acting in his individual capacity. There may be cases when his acts as administrator create an estoppel on him as such, and the estoppel acts prejudicially to the interests he represents, where he may be made liable on his bond to the extent of the injury sustained by the estate; but he is bound by his acts of estoppel just as if he were acting in his individual capacity. *Butler v. Gazzman,* 81 Ala., 491, 1 South., 16; *McDonough v. Hanifan,* 7 Ill., App., 50; *Thomas v. Brooks,* 6 Tex., 369; 18 Cyc., 211, citing many authorities. . . . The business about which the administrator was engaged was a business connected directly with his duties as administrator, and he was acting in or about those duties. By every principle of right, the doctrine of estoppel applies to an administrator under these circumstances, just as it would apply to an individual in his own affairs."

We can conceive of no theory upon which it can reasonably be argued that injustice would attend the application of the doctrine of estoppel to the case at bar. Conceding, *arguendo,* that transfer of title from defendant to Mr. Patterson, or to his estate, was actually

effected, and that respondent has established that the real purchaser of the merchandise was Mr. Patterson, rather than defendant, still it is apparent that the direct effect of the conduct of Mrs. Patterson, as executrix, was to induce appellant to refrain from filing a claim against the estate within the period prescribed by law, now long since past, and that, if appellant's claim was in reality one against the estate, the estate has benefited to that extent by appellant's failure to file its claim seasonably. Having accepted the benefits flowing from this action, the estate cannot now be heard to take a position inconsistent therewith.

Viewing all of the evidence in the light most favorable to respondent, we are yet of the opinion that, as between the parties to this action, respondent is estopped to deny that the property consumed by fire was owned by defendant corporation.

■ It is next contended by respondent that, in any event, respondent estate had an insurable interest in the property that was destroyed; and, having that interest, respondent is entitled to receive the proceeds paid by the insurance companies.

Our statute, Rem. Rev. Stat., § 7033 [P. C. § 2909], defines insurable interest as follows:

" 'Insurable interest' is every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured."

Before going further, it must be noted that the doctrine of estoppel also affects this aspect of the case. Conduct of Mrs. Patterson, with which we have already dealt at some length, precludes respondent from contending that the Alaska business was not continued as the business of defendant. For the same reasons, it prevents respondent from asserting that it had any in-

terest in the insured property other than that as share-holder in defendant corporation.

In writing upon the subject of the interest which a shareholder has in corporate property, the author of 2 Couch's Cyclopedia of Insurance Law, 1215, § 426, has this to say:

"Although there is some question whether a stock-holder in a private corporation has an insurable inter-est in the corporate property, the weight of authority seems to be that he has. And this is consistent with the general rules relating to 'insurable interest,' namely, that such an interest does not necessarily imply a prop-erty in the subject of the insurance, or even a legal or equitable title or possession; that a qualified interest is an insurable interest; that a slight or contingent inter-est is sufficient, when founded upon an actual right to the thing or upon a valid contract relating to it; and that, whenever a legal connection can be shown to exist between injury to the thing insured and loss to the party insuring, it is sufficient. Certainly, stockholders in a corporation organized for pecuniary profit have rights of a pecuniary nature, growing out of their con-nection as such with the company, and they might sus-tain a loss by the destruction of the corporate property more or less dependent upon various circumstances; they have a right to share in the dividends and in the final distribution of the corporate property, and it is the right to share in the profits which constitutes the in-ducement to become a stockholder, and a destruction of, or injury to, such property, might materially affect both the amount of dividends and the value of the stock, especially if the entire property representing the whole capital of the corporation were totally destroyed. Therefore, a stockholder has such an interest in the preservation of the corporate property that he may, by an insurance, contract for indemnity to the extent of his interest, for the actual loss which he might sustain by the injury or destruction of said property . . .

"The interest of a stockholder in corporate property destroyed by fire is not necessarily measured by the

value thereof, for the property is liable first for the debts of the company."

1 Cooley's Briefs on Insurance, 242, states:

"Though a stockholder has an insurable interest in corporate property, which will sustain recovery on a fire insurance policy issued to him thereon, his interest is not necessarily measured by the value thereof, for the reason that the property is liable first for the corporate debts, and the only interest held by him is his right to share in the distribution of the proceeds after payment thereof (*Aetna Ins. Co. v. Kennedy,* 161 Ala. 600, 50 So. 73, 135 Am. St. Rep. 160)."

It follows, then, that, although respondent had an insurable interest in the property of defendant corporation, and an interest in the proceeds obtained from the policies as a result of the loss, these funds were liable first to the claims of creditors of defendant corporation. Appellant, being a creditor of defendant, was entitled to recover the amount of its judgment from moneys paid by the insurance companies.

The judgment is reversed, with instructions to enter judgment in favor of appellant.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ., concur.