### THE LONG ISLAND INSURANCE COMPANY v. THE GREAT WESTERN MANUFACTURING COMPANY.

#### No. 40.

1. FOREIGN INSURANCE COMPANY—*Service of Process—Estoppel.* When a foreign insurance company has filed with the superintendent of insurance of this state, as required by the statute, its written consent that an action may be commenced against it by the service of process upon such superintendent, and it thereafter does business in this state because of the permission so obtained, it is estopped from questioning the jurisdiction of a court acquired by the issuance of a summons to and its service on the superintendent of insurance in the form and manner prescribed by such statute.

2. ―――― *Service of Summons.* It is proper, in an action against such company, for the clerk of the court in which the action is commenced to direct the summons to the superintendent of insurance, instead of to the sheriff, as in ordinary cases, to forward the same directly to the superintendent, and for the latter to indorse thereon an acknowledgment of the service, and make return thereof to the clerk.

3. POLICY—*Nugatory Waiver of Conditions.* A general provision in a policy of insurance that no officer or agent of the company issuing it shall have power to waive any of the conditions of the policy, unless such waiver be in writing, is nugatory, and does not protect the company from a parol waiver made by a general agent.

4. LOSS—*Recovery, When Partial.* The plaintiff in an action brought on a contract of insurance to recover for a loss by fire cannot recover damages as for a total loss, when all the evidence in the case shows that, as to part of the property, the loss was only partial.

MEMORANDUM.—Error from Republic district court ; F. W. STURGES, judge.   Action by The Great Western Manufacturing Company against The Long Island Insurance Company.   Judgment for plaintiff.   Defendant brings the case here.   Reversed.   The opinion herein, filed November 11, 1895, states the case.

*H. M. Jackson,* for plaintiff in error.
*Jay F. Close,* for defendant in error.

The opinion of the court was delivered by

GARVER, J. : The controversy in this case is over the right to recover for a loss by fire under a policy of insurance issued by The Long Island Insurance Company, under date of March 22, 1890, insuring one Charles F. Neerman against loss or damage by fire on certain mill machinery alleged to have been destroyed by fire on the 12th day of April, 1890. After the fire Neerman transferred and assigned all his interest in and rights under the policy to the Great Western Manufacturing Company, plaintiff below. This action was commenced August 28, 1890, and a summons in the ordinary form of a summons was issued by the clerk of the district court of Republic county, directed and transmitted to the superintendent of insurance, by whom service was duly acknowledged, and the summons, with his return thereon, returned to and filed in said court. The jurisdiction of the court was questioned by the insurance company by a motion to quash the summons. This objection was overruled, and the case proceeded to trial, and judgment against the insurance company. The summons is attacked because it was directed to the superintendent of insurance instead of to an officer authorized by law to make service of a summons ; and the service is objected to because made by direct transmission of the summons by the clerk of the court to the superintendent. It is admitted that the defendant is a foreign insurance company authorized to do business in this state, and that it duly filed in the insurance department its written consent, as required by the statute, "that action may be commenced against such company . . . . by service of process on the superintendent of insurance of this state."

Counsel for plaintiff in error, in his brief, states his objection to the summons as follows :

"The true construction of such statute is, that the summons must be issued to the sheriff as otherwise required by the code, and by him served on the superintendent, upon service of which the superintendent must notify the company of such summons."

This objection stands in the face of the positive and unequivocal direction of the statute, and, if sustained, would require the court to substitute a particular form of summons and manner of service, when the legislature has clearly said that another form and manner should be adopted. The same section of the statute which provides that jurisdiction shall be acquired by service of summons on the superintendent of insurance also directs what shall be the form and manner of such service. The language of the statute is : "The summons shall be directed to the superintendence of insurance, and shall require the defendant to answer by a certain day not less than 40 days from its date. Such summons shall be forthwith forwarded by the clerk of the court to the superintendent of insurance, who shall," etc. It is not disputed that the legislature has the right to provide upon what terms and conditions a foreign insurance company may do business in this state. Having formally and voluntarily assented to the conditions imposed, and having agreed that jurisdiction might be obtained in an action brought against it in the manner provided by the statute, and having done business in the state under the permission so granted, it cannot, when brought into court by process issued and served in strict compliance with the statute, question the sufficiency or validity of such service. A similar objection was considered by this court in the case of *German*

*Ins. Co. v. Hall,* 1 Kan. App. 43 (41 Pac. Rep. 69), and the validity of the service sustained. We see no reason to change the views expressed in the opinion in that case.

The next question raised is as to the right of the insured or his assignee to recover, in any event, under the policy. It is contended on behalf of the plaintiff in error that the interest of Neerman in the property insured was not truly stated in the policy; that he was not the absolute owner thereof, and that, therefore, under the terms of the policy, the contract of insurance was avoided. It appears from the record that Neerman, a short time before the insurance was written, purchased the mill machinery from The Great Western Manufacturing Company under a contract or agreement providing for payment therefor in installments, and that, until full payment was made, the legal title was to remain in the vendor. At the time of the fire, something over $1,100 remained unpaid on the contract. No written application was made for the insurance, but the policy contained, among others, the following conditions :

"This entire policy, unless otherwise provided by agreement indorsed hereon, or attached hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership, . . . or if the subject of insurance be personal property, and be or become incumbered by chattel mortgage."

The policy also contained the provision that no officer, agent or other representative of the company should have power to waive, or be held to have waived, any conditions or provisions of the policy, unless the waiver be written upon or attached thereto. There is no material conflict in the evidence as to the facts and circumstances surrounding the writ-

ing of this policy. Radford, the local agent of the insurance company, who wrote the insurance, understood at the time the risk was taken, and before the policy was delivered by him, the nature of Neerman's interest in the property; and he was then informed that it was only partially paid for; that it had been purchased under a contract of sale which provided for the retention of the title by the vendor as security for the deferred payments, and that Neerman was not, and did not claim to be, the unconditional and sole owner of the property. Counsel for plaintiff in error claims that such knowledge of the agent cannot aid in avoiding the forfeiture provided for by the express terms of the policy; that the conditions of the policy as to ownership cannot be held to have been waived, unless such waiver was indorsed on or attached to the policy. With this contention we cannot agree. There is, of course, much force in the argument, that one claiming under a written policy of insurance is bound by whatever representations or limitations of authority appear therein with reference to any particular agent or class of agents. So long as such express limitations are with reference to matters concerning which the parties may legally contract, there would seem to be no valid reason why each party should not be conclusively presumed to have knowledge thereof, nor why his rights and obligations should not be measured thereby. The rule is well settled that the act of an agent does not bind his principal, when the person dealing with the agent has express notice that the agent has no power to do that particular thing. This principle has often been applied in contracts of insurance, and insurance companies held not bound by the contracts or acts of local agents, after the issuance and delivery

of policies containing express limitations of authority. To this effect are most of the cases cited by counsel for plaintiff in error, and this is the principle which underlies the decision of the court in *Burlington Ins. Co. v. Gibbons*, 43 Kan. 15. In that case the court held that, as the insured relied upon an agent having only limited powers, the company was not bound by a waiver of the conditions of the policy by the agent, when the policy itself gave notice that such waiver could not be made by him. Conceding the correctness of the rule thus announced in *Burlington Ins. Co. v. Gibbons*, though it seems to be questioned in the subsequent case of *German Ins. Co. v. Gray*, 43 Kan. 497, it does not aid the plaintiff in error in this case. The policy under consideration is sweeping in its limitations of authority, and provides that there can be no waiver by *any* officer or agent of the company, unless in writing, indorsed upon or attached to the policy. Such an attempted limitation of the power of all agents of a company, which can act only through agents, is quite different from the restriction of the authority of a particular agent or class of agents and the intrusting of the execution of the excepted things to certain general officers of the company. It is well settled by the decisions of the courts of this and other states, that such a sweeping limitation of the powers of the. agents of a corporation is nugatory, upon the principle that one of the parties to a written contract which is not required by law to be in writing may, subsequently to the making of the contract, by parol agreement, waive any of the provisions thereof which were incorporated therein for his benefit, even though such contract expressly provides that no waiver shall be made unless in writing. The effect of such limi-

tations is considered at length in *Phenix Ins. Co. v. Munger*, 49 Kan. 178, and the authorities cited, which sustain the proposition. The court in that case held, after a review of the decisions upon the question, that an agent such as Radford was may bind his company by a parol waiver of the conditions of the policy, notwithstanding it expressly provides that a waiver shall not be made by any agent unless in writing. It is idle to consider the decisions of the courts of other states in the face of this decision of our own supreme court.

It is also well settled by the supreme court of this state, that in an action upon an insurance policy for the recovery of a loss sustained by fire the company is estopped, in the absence of any fraud on the part of the insured, from raising any question as to the validity of the policy on the ground that the interest of the insured in the property was not truly stated in the policy, when the agent who issued the policy and effected the insurance on behalf of the company was fully informed as to the title and ownership of the property or its condition as to incumbrances before the policy was written or delivered. (*Am. Cent. Ins. Co. v. McLanathan*, 11 Kan. 533; *Sullivan v. Phœnix Ins. Co.*, 34 id. 170; *National Ins. Co. v. Barnes*, 41 id. 161; *Continental Ins. Co. v. Pearce*, 39 id. 396; *German Ins. Co. v. Gray*, 43 id. 197; *Phenix Ins. Co. v. Weeks*, 45 id. 751; *Capitol Ins. Co. v. Bank of Pleasanton*, 50 id. 449.)

Upon the authority of these cases we hold, when the agent, Radford, with full knowledge of the interest of the insured in the property, agreed to write the insurance, received the premium, and delivered the policy, and the insured accepted it, relying in good faith upon the validity of the contract of insur-

ance thus effected, that the company cannot avoid liability for a loss because of a condition of the policy providing for a forfeiture in case the insured was not, at the time the insurance was written, the unconditional and sole owner of the property. The nature and extent of the insured's interest in the property was made known to the company, and if it was not truly expressed in the written policy thereafter issued by it, it was because of its own fault and neglect, and it would be acting in bad faith toward the insured if the company should now be permitted to escape liability because of such omission.

Another error is alleged, in the assessment by the court of the amount of the damages for which judgment was rendered. The court allowed as for a total loss, and gave judgment accordingly. Under the terms of the policy, the company was not liable beyond the actual damage to the property by the fire, and if such damage was only partial as compared to the actual value of the property, it was liable for only the partial loss. The court found the actual value of the property insured and injured by the fire to be $1,704.57, and gave judgment against the company for three-fourths of that amount, in accordance with the conditions of the policy. The property consisted of a steam-engine and boiler, and a large number of other articles designated as mill and elevator machinery. The evidence does not show the value of each separate article. The engine, boiler, and a number of other articles for use in connection therewith, were valued together at about $500. There is nothing in the record to show how much of this valuation was for the boiler alone. As to all machinery other than the boiler, the evidence shows a total loss; as to the boiler, it shows only a partial loss. The

proofs of loss, which were made under oath by the insured and sent to the company, and which were introduced in evidence on the trial, stated : "The loss on said property was total, except on boiler, the damages to which amount to about $100." The only direct evidence given upon the trial as to the damage to the property was that given by Neerman, as follows : "Q. Was the property entirely destroyed, or was it partially destroyed? A. Why, it was a total wreck, with the exception of the boiler, probably." The only other evidence given upon the subject is found in the deposition of John Wilson, president of the Great Western Manufacturing Company, who stated that he was familiar with the machinery in question, that his company had sold it to Neerman, but that he had not seen it since the fire, and had no personal knowledge of its actual condition. He, however, testified :

"The engine, after having gone through the fire, would, in my opinion or judgment, be rendered entirely worthless. The boiler might not be so badly injured. The condition of it after the fire would depend entirely upon circumstances. If the boiler was empty, that is, if the boiler did not have any water in it at the time of the fire, it would, in all probability, get very hot and the fire would spoil it very materially."

On cross-examination, he said :

"Q. State whether or not you have seen the machinery since it was shipped from your place. A. I have not.

"Q. How then do you determine the condition of the machinery since the fire? A. Merely from our experience in examining machinery after having gone through a fire."

The plaintiff recovered as for the total destruction

of the boiler.  Such a recovery cannot be sustained, unless it is supported by competent evidence from which the court could fairly infer a total loss.  The proofs of loss as to the damage sustained were competent against the insured, considered as his statements or admissions.  In them he admits that the loss upon the boiler was not total, and was about $100.  On the trial he makes the same exception. There is nothing to show how much more than $100 the boiler was actually worth previous to or after the fire.  In this respect the evidence does not sustain the findings and judgment of the court.  As there is no separate finding as to the values of, or the amounts allowed for, the different articles of property, we are unable to determine to what extent this error affects the judgment.

Because of the error in the assessment of the amount of damages, the judgment must be reversed and a new trial had.

All the Judges concurring.