No. 32,215

MARY RANEY, *Appellant*, v. MILL OWNERS MUTUAL FIRE INSURANCE COMPANY, of Iowa, *Appellee*.

(44 P. 2d 285)

Opinion filed May 4, 1935.

*A. L. Billings*, of Independence, for the appellant.

*W. N. Banks*, *O. L. O'Brien* and *Walter L. McVey*, all of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a policy of fire insurance. The defense was a plea of nonliability under its terms.

The facts were these: Prior to the issuance of the policy sued on, one Mrs. Frances Bunn owned the property which was comprised of a dwelling house and a small tract of land. Mrs. Bunn mortgaged

the property to the Ætna Building and Loan Association of Topeka to secure a loan of $3,500.

Later, on May 15, 1929, Mrs. Bunn sold the property to one Blanche Baker, subject to the $3,500 mortgage, and took a second mortgage on the property for $2,850 to secure the payment of the purchase price.

Then Blanche Baker obtained the fire insurance policy sued on from the defendant insurance company. It was dated September 27, 1930, and insured the property for $4,000, $3,800 of which specifically covered the dwelling house. A loss-payable clause in favor of the Ætna Building and Loan Association, first mortgagee, was attached to the policy, and the policy was sent to the mortgagee in Topeka.

Mrs. Bunn, the second mortgagee, assigned her second mortgage to her sister, Mary Raney, plaintiff herein. Blanche Baker defaulted in her payments on both mortgages, and at the instance of one Ransdall, local agent of the first mortgagee, and who was also agent for the defendant insurance company at Independence, Mary Raney, plaintiff herein, commenced proceedings on December 24, 1931, to foreclose her second mortgage. Judgment was entered in her behalf on April 29, 1932. Five days later, May 4, 1932, the house burned.

In accordance with the loss-payable clause the defendant insurance company paid the sum of $3,335.88 to the first mortgagee and took an assignment of the mortgage.

On August 30, 1933, some sixteen months after the fire, Mary Raney got an assignment of the interest of Blanche Baker in the insurance policy (already largely discharged by payment to the first mortgagee) and brought this action to recover thereon. Among other matters plaintiff alleged that the policy had been negotiated through one J. W. Sevier, agent for the defendant at Independence, and that after the fire a later agent of defendant, M. D. Ransdall, advised her that defendant had adjusted the amount of the loss at $3,800, and that proper proofs of loss had been furnished. Plaintiff prayed judgment for $3,800 and interest thereon and for an attorney's fee.

The defendant insurance company answered with a general denial, citing certain provisions of the policy, particularly one which provided that the commencement of foreclosure proceedings would avoid it, and that no officer or agent of the defendant had authority

to waive any of its terms except by written indorsement on or attached to the insurance contract.

Plaintiff's reply raised issues of law and alleged that defendant's agent, Sevier, and his successor, Ransdall, had actual knowledge that the property was covered by a second mortgage, and that—

"About December ——, 1931, [Ransdall] orally requested plaintiff to foreclose her said second mortgage in district court of Montgomery county, Kansas, at Independence, and at the same time orally said to plaintiff that he would look after the said policy of insurance on said property described and keep it in force for insured and plaintiff, and there was nothing for plaintiff or insured to do concerning said policy because of said foreclosure, and that in event of loss he would keep in mind the record of the title as shown by the register of deeds office and court action."

In her reply plaintiff further alleged that it was pursuant to this request of Ransdall that she commenced the foreclosure proceedings which ripened into judgment on April 29, 1932; that a judicial sale in foreclosure followed on July 16, 1932, at which sale plaintiff bid in the property; that those proceedings were known to Ransdall as agent of defendant at the times they transpired; that Ransdall as agent for defendant—

"Orally waived the provisions of said policy in this action sued on, concerning the foreclosure proceedings and change of ownership as above recited, and defendant company is estopped from enforcing said provisions of said policy in reference to foreclosure and change of ownership."

Replying further, plaintiff alleged that when the policy was executed and delivered to Blanche Baker, Sevier was the "local general agent" of defendant who had negotiated the insurance contract; that on October 30, 1930, Sevier, with the knowledge and consent of defendant, transferred his insurance business as agent of defendant to Ransdall, and that the latter had conducted defendant's business as its "local general agent" at Independence ever since, and that Ransdall had waived whatever requirements of the policy had not been complied with by the insured.

At the trial plaintiff adduced evidence which tended to show that Ransdall was quite aware of the existence of the second mortgage, and that he repeatedly urged plaintiff to commence foreclosure proceedings, with the admonition and advice that if she did not do so, "the Ætna company was going to foreclose their mortgage," and that to save her mortgage she would either have to pay up the overdue installments on the first mortgage or take it up. Plaintiff testified:

"I told him I would foreclose. I asked him if there was any papers for me to sign and he said 'no, there would be no papers for me to sign to take care of that.' I asked him about the insurance and he said the insurance and the abstract was with the Ætna.

"Q. Give us the substance of what he said to you about what he would do with reference to the insurance policy. A. He said he would see to it and keep it alive for me."

Mrs. Bunn, sister of plaintiff, gave testimony to the same general effect. The testimony of a third sister, Mrs. Prescott, accorded with the foregoing, except as follows:

"We thought the insurance was with Hunter [another insurance agency]; but you see Mr. Ransdall had the Ætna mortgage for Mr. Baker, and we didn't know it until after the fire that Hunter didn't have the insurance, that Mr. Baker had canceled it with Hunter and taken it elsewhere."

Plaintiff herself had testified that a policy against fire had been taken with the Hunter agency.

There was no evidence that the defendant insurance company had any notice or knowledge of the existence of the second mortgage unless the knowledge of Ransdall, its agent at Independence, had that effect.

Touching the scope of Ransdall's agency, it was shown that he solicited insurance, wrote policies, countersigned them, collected, made indorsements, issued vacancy permits, mortgage clauses, but he had no authority to cancel policies and did not issue foreclosure permits. Defendant sent him policies in pads ready to be filled out, already signed by the president or secretary of the company.

Defendant's demurrer to plaintiff's evidence was sustained, and judgment was entered in favor of defendant.

Plaintiff appeals, contending, first, that the evidence was sufficient as against a demurrer to show that Sevier and, later, Ransdall, were general agents of the defendant; that their knowledge that the insured property was covered by a second mortgage was notice to their principal; that Ransdall's urging of plaintiff to commence foreclosure of her second mortgage and his assuring her that he would see to the insurance and keep it alive for plaintiff was a waiver of the provision in the policy that commencement of foreclosure proceedings would vitiate it; and that the provision of the policy that its terms could only be altered or waived by written indorsement on or attached to the policy was not binding on the assured or plaintiff as assignee of the assured's interest.

A provision in a fire insurance policy that the commencement of

foreclosure proceedings shall render the policy void is valid. (*Hole v. Nat'l Fire Ins. Co.,* 122 Kan. 328, 252 Pac. 263, 50 A. L. R. 1113 and note; 26 C. J. 238-239; 14 R. C. L. 1126-1127.)

Appellant contends that the provision of the policy that no officer or agent of the defendant shall have power to waive any of its terms except by written indorsement on the policy or attached to it is nugatory, and certain early Kansas cases are cited in support of this contention. (*Long Island Ins. Co. v. G. W. Mfg. Co.,* 2 Kan. App. 377, 42 Pac. 738; *Insurance Co. v. Gray,* 43 Kan. 497, 23 Pac. 637.) It will not be necessary at this time to reëxamine the wisdom of that rule, although its possibilities for the encouragement of perjury are obvious. We note in passing that there are two lines of authority on the subject. (32 C. J. 1318-1320; id., 1339-1341; 2 Couch on Insurance, 1515 *et seq.*) Appellant likewise contends that Sevier and his successor, Ransdall, were general agents. A specific adjudication to that effect would probably be a surprise to these agents as well as to their company; but it will not be necessary to determine the point.

Let us assume that the provision of the contract against the efficacy of an oral waiver is nugatory, and that Ransdall was a general agent of defendant with authority to make an oral waiver of the provision in the policy that the commencement of foreclosure proceedings would avoid the policy. What were the facts upon which the claimed oral waiver is predicated? We use the word "facts" rather than the word "evidence" merely because the cause was disposed of on demurrer to the evidence, which assumed that the evidence was true. When Ransdall was urging plaintiff to commence foreclosure proceedings, giving the reason therefor that otherwise the first mortgagee would foreclose with the consequent likelihood that plaintiff's second mortgage would be squeezed out, he was obviously speaking as agent of the mortgage company, not as agent of the insurance company. When Ransdall told plaintiff he would see to the insurance and keep it alive for her, what insurance did plaintiff understand him to be talking about? Certainly not the insurance policy issued by this company. Plaintiff knew nothing about that insurance policy. She supposed it was some insurance policy which had been issued through the "Hunter agency," and which unknown to her the husband of the mortgagor had canceled. There is not the slightest ground for the assumption that Ransdall

was speaking in his capacity as agent for this defendant when he promised to keep the insurance alive for plaintiff's benefit.

In *Cure v. Insurance Co.*, 109 Kan. 259, 198 Pac. 940, it was said:

"To constitute a waiver of a contract right, there must be a clear, unequivocal and decisive act of the party showing an intention to relinquish the right, or acts amounting to an estoppel on his part." (Syl. ¶ 2.)

See, also, 27 R. C. L. 908-912.

Let us next consider if plaintiff has another string to her bow by virtue of the assignment of the mortgagor's interest in the policy which plaintiff acquired long after the fire. The policy insured the house for $3,800. The defendant paid the first mortgagee the sum of $3,335.88, from which it might superficially appear that the insured had a balance of $464.12 due her, which she could collect or lawfully assign to plaintiff. But the provision of the policy that the commencement of foreclosure proceedings would vitiate it was certainly good against the insured. Ransdall made no promise to Blanche Baker, the insured owner of the doubly mortgaged home, that this insurance policy sued on or any other would be kept alive for her benefit if foreclosure proceedings were instituted against her and her property. She could not recover on the policy. Therefore the assignment of her interest sixteen months later to plaintiff conveyed nothing.

Some other matters urged in appellant's brief have been considered, but since the foregoing effectively disposes of this appeal they do not require discussion.

The judgment is affirmed.