**UNITED STATES of America for the Use of Theodore A. TANOS, Appellant,**

v.

**ST. PAUL MERCURY INSURANCE COMPANY, Appellee.**

No. 22345.

United States Court of Appeals
Fifth Circuit.

May 31, 1966.

Rehearing Denied July 18, 1966.

John R. Brown, Circuit Judge, dissented.

Richard H. W. Maloy, Coral Gables, Fla., Helen Tanos Hope and Alfred Bieley, Miami, Fla., for appellant.

Robert M. Sturrup, Don R. Livingstone, Dean & Adams, Miami, Fla., for appellee.

Before PHILLIPS,* JONES and BROWN, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge:

Tanos, a use plaintiff, obtained a money judgment in the United States District Court for the District of Puerto Rico on July 3, 1962, which became final. He thereafter instituted this action in garnishment in the United States District Court for the Southern District of Florida, naming St. Paul Mercury Insurance Company[1] as garnishee. The writ of garnishment was issued and was served upon the Insurance Company by a Florida county sheriff. The court sustained the Insurance Company's motion to quash the service of the writ on the ground that the sheriff was not authorized to serve the writ. Thereafter, Tanos caused a second writ of garnishment to be issued, which was served on the Insurance Company by the United States Marshal. The

---

* Of the Tenth Circuit, sitting by designation.

1. Hereinafter called the Insurance Company.

garnishee filed an answer to the writ, denying it was indebted to the judgment debtor, or had in its possession any money, goods, chattels, credits, or effects of the judgment debtor.

The Insurance Company was the surety on a supersedeas bond, given to supersede a judgment running in favor of the judgment debtor. The judgment had become final. Other persons were claiming the amount due on such judgment, adversely to the judgment debtor. After the service of the first garnishment writ had been quashed and prior to the time the second writ of garnishment was served, the Insurance Company had obtained an order from a state court permitting it to deposit in the registry of such court the full amount due on the superseded judgment, and the Insurance Company had so deposited such amount. Accordingly, at the time the second writ of garnishment was served, the Insurance Company was no longer indebted to the judgment debtor. From a summary judgment in favor of the Insurance Company, Tanos has appealed.

The sole question presented is whether the court erred in quashing the service of the first writ of garnishment.

Rule 1.3(c) of the Florida Rules of Civil Procedure (30 F.S.A., page 18) in part here material provides:

"(c) *Service—By Whom Made.* Service of process may be made by any officer authorized by law to serve process; but if such officer shall, for any reason be disqualified or unable to act, the Court may appoint any competent person not interested in the case on trial to serve such process."

Rule 4(c) of the Federal Rules of Civil Procedure in part here material provides:

"(c) *By Whom Served.* Service of *all* process shall be made by a United States marshal, by his deputy, or by some person specially appointed by the court for that purpose, * * *." Italics ours.

Rule 64 of the Federal Rules of Civil Procedure in part here pertinent provides:

"At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; * * *. The remedies thus available include * * * garnishment, * * *."

Rule 1.3(c) of the Florida Rules of Civil Procedure is a rule applicable generally to service of process in civil actions, and is not limited in its application to service of writs of garnishment, or other supplementary writs.

Moreover, the Federal Rules of Civil Procedure have statutory effect[2] and Rule 64, supra, provides that "any existing statute of the United States governs to the extent to which it is applicable."

We are of the opinion that Rule 4(c), supra, governs the service of writs of garnishment issued in a proceeding in a federal court, rather than Rule 1.3(c), supra, which is not a rule peculiarly applicable to service of writs of garnishment.[3]

We conclude the order quashing the service was proper.

Affirmed.

2. Moore's Federal Practice, 2nd Ed., Vol. 7, Ch. 69, ¶69.04. See also, Rumsey v. George E. Failing Company, 10 Cir., 333 F.2d 960, 962.

3. Rumsey v. George E. Failing Company, supra; Mid-Continent Casualty Company v. Everett, 10 Cir., 340 F.2d 65, 69; Moore's Federal Practice, supra, ¶69.-03 [2], ¶69.04 [2], n. 1, p. 2413.

JOHN R. BROWN, Circuit Judge (dissenting):

In spite of the fact that the Federal Rules dealing with service of process, F.R.Civ.P. 4, and garnishment, F.R.Civ. P. 64 and 69,[1] have been consistently amended to allow resort to state procedure in the Federal District Courts, and in spite of the fact that the Appellee-Garnishee got all the notice it was entitled to under Florida, and federal, law, the Court, by relying on two easily distinguishable Tenth Circuit decisions and without much mention of the law of Florida applicable to the facts of this case, holds that it makes a difference whether the writ of garnishment issued by the Clerk of the Federal Court is delivered by a man wearing a star-shaped, five-pointed rather than a shield-shaped, eagle-topped badge. Believing that the Rules do not require such a formalistic, ritualistic distinction, I respectfully dissent from the Court's conclusion that the United States Marshal and only the United States Marshal must serve such a writ.

Before explaining why I must dissent, I deem it appropriate and necessary to add these undisputed record facts to the majority's description of the events which give rise to this appeal. First, Tanos' affidavit application for the issuance of the original writ of garnishment did not request that the Clerk of the District Court address it to any Florida Sheriff. Nevertheless, the Clerk, who is authorized to issue the writ by virtue of Rule 4(a) and 77(c),[2] expressly directed the writ "TO THE UNITED STATES MARSHAL, AND OR THE SHERIFFS AND CONSTABLES OF THE STATE OF FLORIDA." [3] Second, the Florida sher-

---

1. Rule 69 provides:

"* * * The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

* * *"

Though the language of this rule is, for the purposes of this case, identical to that of Rule 64, it is clear that Rule 69, dealing with garnishment *after* judgment, rather than Rule 64, dealing with garnishment *before* judgment, see 7 Moore, Federal Practice #64.04 [1], at 1508 n. 7, is applicable here where the Appellant-Garnishor is attempting to enforce a judgment rendered by the District Court of Puerto Rico and registered with the Southern District of Florida. The majority perhaps inadvertently, refers to, and quotes from, Rule 64.

2. F.R.Civ.P. 77(c) provides:

"* * * All motions and applications in the clerk's office * * * for issuing final process to enforce and execute judgments, * * * are grantable of course by the clerk * * *."

3. The writ then provided:

"You are commended to serve this writ of garnishment upon ST. PAUL MERCURY INSURANCE COMPANY, c/o Insurance Commissioner of the State of Florida, J. Edwin Larson, Tallahassee, Florida, as Garnishee herein, who is hereby directed to serve upon the above named Plaintiff's Attorneys, ALFRED D. BIELEY AND HELEN TANOS HOPE, whose address is 19 W. Flagler Street, Suit 605, Miami, Florida, 379-2841, an answer, and file the Original Answer in the Office of the Clerk of the U. S. District Court, to this Writ of Garnishment within 20 days after service thereof, and in said answer to state, on oath, whether you, the said garnishee, are at the time of your answer indebted to the defendant MAJOR E. THRELKELD, or were indebted to said Defendant at the time of service upon you of this writ, or at any time between such periods, and in what sum or sums and what goods, money, chattels, or effects of said Defendant you have at the time of your answer in your hands, possession, or control, or that you had at the time of service upon you of this writ, or at any time between such periods, and whether you know of any other indebted to said defendant, or who may have any of the effects of said defendant in his hands, HEREIN FAIL NOT.

"Plaintiff expects to recover of or from the Defendant THRELKELD, the sum of $8,513.42 plus interest from 12/30/60, plus $1,000.00 attorney's fees, plus $89.-04.

"WITNESS, JOSEPH I. BOGART, Clerk of said Court in and for the Southern District of Florida, Miami Division, and the Seal of said Court at the Fed-

iff to whom the writ was delivered [4] served the writ, not upon the Insurance Company, but upon the State Insurance Commissioner [5] as required by the terms of the writ [6] and Florida law under which there was one and only one way the In- surance Company could have been served, and that was by substituted service upon the Commissioner who then had to mail a copy of the writ to a person designated by the Company.[7] The process server, neither seeking nor seeing any official of

eral Building, in the City of Miami, aforesaid on this 4 day of November 1963.

(SEAL)     JOSEPH I. BOGART
          JOSEPH I. BOGART, Clerk
          United States District Court
          By S/ Michael Oswald D.C."

4. The record does not indicate whether the Clerk or Appellant delivered the writ to the sheriff. Rule 4(a) requires the Clerk upon the commencement of an action to deliver the summons to the marshal or to a person specially appointed to serve it. The Florida statutes, however, do not indicate how any type of process requiring personal service is to be put in the hands of the server. *But see* Author's Comment to Fla.R.Civ.P. 1.3, 30 Fla.Stat.Ann. 21: "The normal practice is for counsel to see that the summons gets into the hands of the proper sheriff * * *."

5. The sheriff's return recites that the writ was executed "by delivering three true copies of this writ * * * to J. Edwin Larson, State Treasurer of the State of Florida, and ex-officio Insurance Commissioner * * * for and on behalf of * * * St. Paul Mercury Insurance Company such service being made under and by virtue of authority of Section 624.- 0222, Florida Statutes, 1959 [F.S.A.]"

6. See note 3, supra.

7. Although Fla.Stat.Ann. § 77.05 provides that "[t]he writ [of garnishment] shall be served in the same manner as service of summons," there is only one way in which summons may be served upon an insurance company in Florida. This is not obvious upon first glance at the Florida statutes. Section 47.17 sets out the method for personal service on corporations, domestic and foreign, and provides that this method "shall be cumulative to all existing laws," § 47.17(7). Section 47.33 then refers to some of these other laws which provide "[o]ptional methods of service of process upon certain persons: "In addition to the methods of service of process provided in this chapter, service upon the following mentioned classes of persons may also be made as provided in the following sections of these statutes, towit: * * * corporations * * * doing an insurance business in this state, § 624.0221; * * *."

The Revision Note to § 47.33 explains that "[t]his section has been supplied as information and as a reference to special or specific instances where other methods of service of process is specifically provided. It is also the purpose of this section to clear up any possible question as to whether or not service may be had under the provisions of this chapter as well as under specifically mentioned sections." Thus, in serving an insurance company there would at first appear to be a choice between personal service provided by § 47.17 and the method of service provided by § 624.0221. But quite to the contrary, § 624.0221 and its implementing provision, § 624.0222, reveal that there is no choice:

"624.0221 Service of process; appointment of commissioner as process agent.—

"(1) Each insurer applying for authority to transact insurance in this state, whether domestic, foreign or alien, shall file with the commissioner [of insurance] its appointment of the commissioner * * * as its attorney to receive service of all legal process issued against it * * * and agreeing that *process so served shall be valid and binding upon the insurer.* * * *

"(2) At the time of such appointment of the commissioner as its process agent the insurer shall file with the commissioner designation of the name and address of the person to whom process against it is served upon the commissioner is to be forwarded. * * *

"(3) Service of process upon the commissioner as the insurer's attorney pursuant to such an appointment shall be *the sole method* of service of process upon an authorized domestic, foreign or alien insurer in this state.

"624.0222 Serving process.—

"(1) Service of process upon the commissioner as process agent of the insurer (under § 624.0221) shall be made by serving copies in triplicate of the process upon the commissioner or upon his assistant, deputy, or other person in charge of his office. Upon receiving such service the commissioner shall file one copy in his office, return one copy with his admission of service, and promptly forward one copy of the proc-

the Insurance Company, was thus two steps removed from the defendant: (1) the Insurance Commissioner and (2) the United States postman. Third, on the same day that the Insurance Commissioner received the writ and acknowledged thereon "Service of the within WRIT OF GARNISHMENT accepted by me on behalf of the garnishees, ST. PAUL MERCURY INSURANCE COMPANY," he sent a copy of the writ, together with a statement that the writ had been served on him by the sheriff, by registered mail to the Insurance Company's president.

From these additional facts—presumably not considered by the Court—it is clear that we are here dealing with a case of substituted, rather than personal, service of process. Since the Insurance Company does not claim any impropriety in the action of the Insurance Commissioner or any deficiency in the notice it promptly received from him, and since substituted service on the Commissioner is the sole method by which an insurance company can be served under Florida law, the sole question boils down to this: does it make any difference under Rule 4(c) whether the United States Marshal or the Florida Sheriff delivers the writ of garnishment to the State Insurance Commissioner whose function is then to send it on by mail which he did? [8]

The purpose of service of process being notice to the parties involved, where personal service is required there might be justification for a strict application of the demand of Rule 4(c) that process be served by a Marshal or by someone specially appointed by the District Court to serve process.[9] For personal service is required in order to give actual notice and

ess by registered or certified mail to the person last designated by the insurer to receive the same * * *.
" * * *
"(3) Process served upon the commissioner and copy thereof forwarded as in this section provided *shall for all purposes constitute valid and binding service thereof upon the insurer.*" (Emphasis added.)

8. That this is so is obvious from the fact that the second writ of garnishment, which all concede to have been validly served, was identical in all respects to the first writ except that it was addressed solely to the United States Marshal and was delivered by him to the Insurance Commissioner.

The majority, by stating that "[a]fter the service of the first garnishment writ had been quashed," the Insurance Company pursuant to a State Court's order deposited the full amount owing Tanos into the registry of that court, gives the impression that this whole question could have been avoided had Tanos, upon the service of the first writ being quashed, promptly resorted to the simple expedient of having the Marshal re-serve the original writ. Indeed, it will often be the case that a subsequent valid service of the same writ will make immaterial the consequences of a deficient service. See Dehne v. Hillman, Inv. Co., 3 Cir., 1940, 110 F.2d 456; 1 Barron & Holtzoff, Federal Practice and Procedure § 173, at 652 (Wright rev. 1960). But here the record is clear that the Insurance Company transferred to the state Court the funds it owed Tanos immediately after the first writ was served and, contrary to the majority opinion, *before* the first service was quashed, and for that matter, *before* it even moved to quash this service. Far from sleeping on his rights, Tanos did what he could after he discovered that he, the Clerk, and the Insurance Commissioner were wrong in their judgment as to the sufficiency of service by the sheriff: he first tried to appeal from the District Court's order quashing the service, and when we dismissed his appeal—as I think we were bound to do— for want of a final, appealable order, he unsuccessfully urged the District Court to enter a final judgment which would be appealable. The Court did so only after he validly served the second writ and the Insurance Company answered. When Tanos discovered that the service of the first writ was questioned, it was too late for a second service to have any effect except to precipitate a final, appealable judgment upon which he could raise the question here presented.

9. Rules 4(d) (7), 4(e), and 69(a) reveal a policy to conform the *manner* in which federal process is served to the manner in which state process is served. This same policy would have consistently dictated the service of federal process by those persons empowered to serve state process. This would have meant that in some states, such as New York, federal process could be served by any person who is not a party and not under 18

demanding that such service be made by a person of integrity and experience not only protects the defendant from harassment by overzealous or unscrupulous process-servers, but assures the Court, through the server's return, that the proper person was actually notified of the pending litigation.

But this is not a case of personal service. This is a case of substituted service on a State officer as the defendant's statutory agent for service of process. And substituted service does not have to give actual notice so long as it provides reasonable probability of such notice. Service upon the Insurance Commissioner as the defendant's statutory but otherwise fictional agent is effective and binding provided that he promptly forwards by mail to the person designed by the defendant a copy of the process so served. The person so designated need not be an agent of the defendant, and it makes no difference that the person so designated then fails to notify the defendant. Actual notice is immaterial. The Court need only assure itself that there is a reasonable probability that the defendant was notified, and this assurance is provided by the Commissioner's acknowledgment that he has accepted service on behalf of the defendant and by the presumption— here unchallenged—that the Commissioner forwarded [10] a copy of the writ as the law requires.

The process server never sees, never looks for, the defendant. His job is easy. He need only deliver a copy of the writ to the Insurance Commissioner's office in a Florida State office building. Indeed, he fails in his job if he goes elsewhere and seeks out the defendant insurer (see note 7, supra). There is no danger that he will serve the wrong person, for there is only one Insurance Commissioner and the location of his office is common knowledge. There is no danger that he will misrepresent the fact that he has actually made service, for the Court has before it the written acknowledgment of this responsible State official that a copy of the writ has actually been received. And the person designated by the defendant to receive a copy of the writ receives the same copy and same notice regardless of how the writ comes into the hands of the Commissioner—whether it is delivered there by the Marshal, the sheriff, or for that matter, even the postman.

I simply cannot discover any purpose to be served by insisting that the Marshal and only the Marshal physically go to the office of the Commissioner and personally hand him the writ, and I thus see no reason for giving Rule 4(c) such a hyper-technical interpretation to reach such a sterile result.

Certainly the Tenth Circuit decisions in Rumsey v. George E. Failing Co., 10 Cir., 1964, 333 F.2d 960, and Mid-Continent Cas. Co. v. Everett, 10 Cir., 1965, 340 F.2d 65, both of which I accept, do not compel or even suggest such a result. In general these cases hold that, to the

years of age. Evidently, conformity on the question of *who* is to serve process, as distinguished from *how* process is to be served, was thought unwise. However, it was also clear that in many cases it would be inconvenient, if not impossible, to insist on service by the federal Marshal. Thus, Rule 4(c), compromising between absolute safety and practical convenience, provides for service by either a Marshal or a person specially appointed by the Court for that purpose. Its purpose is to insure that a responsible person is entrusted with service of process. The District Court could have appointed the Florida sheriff formally to serve the writ in this case, but Tanos never requested such appointment. Nevertheless, when the Clerk of the District Court addresses a writ in the name of the United States District Court for the Southern District of Florida to a responsible state officer empowered to serve state process, it is entirely consistent with the spirit of Rule 4(c) to dispense with formal appointment by the Judge himself. Indeed, the Judge seems to have overlooked altogether the fact that the Court, through the Clerk, directed this manner of service. Litigants who have no recourse against Judges have reason to wonder how, to their detriment, the Court can so easily brush aside the assumed error of its officer.

10. The record shows that the defendant received a copy of the writ from the Commissioner.

extent other Federal Rules are applicable in supplementary proceeding under Rule 69(a), these other provisions rather than state law govern the procedure to be followed. I agree. But in these cases there was no question as to the sufficiency of the service of the writ of garnishment. The problem there arose because the Garnishee mailed his answer to the Garnishor as provided in F.R.Civ.P. 5(b) instead of personally serving it upon him as required by Kansas law. Although the Court used some language to the effect that the Federal Rules are controlling,[11] the sole issue it had to decide was whether Kansas law was controlling. It held only that delivering the answer to the Garnishor pursuant to Rule 5(b) was permissible. It did not hold that following the Kansas procedure would be impermissible.[12] In *Rumsey*, the Court expressly stated: "In the instant case we need go no further in determining to what extent the Federal Rules of Civil Procedure are applicable in supplementary proceedings." 333 F.2d at 962. And in *Mid-Continent* the Court likewise went no further.

Thus, it is obvious that neither of these decisions are controlling, unless, that is, we are willing, which I am not, to change "may" to "must" and "5(b)" to "4(c)" in the Court's holding that where 5(b) is applicable, it may be followed in lieu of the state procedure. I agree that the Marshal could have served the writ of garnishment on the Insurance Commissioner in this case. But our question is whether the sheriff could likewise do so. The only case cited by the parties [13] which addresses itself to this question, clearly holds that he could. Ospina v. Vanelli, D.Minn., 1964, 34 F.R.D. 151.[14] But putting this case to one side, and accepting for the moment the proposition that Rule 4(c) "must" be followed to the extent that it is applicable in supplemen-

11. In *Rumsey*, the Court quotes the following language from 7 Moore, Federal Practice #69.03 [1], at 2407:

"The Committee [in providing in Rule 69(a) for continuing conformity to state practice] believed that the development of a series of rules on supplementary proceedings would be impractical and onerous in that such rules would have to be relatively detailed in order to meet the diverse situations in the various states. Furthermore, most states have provisions on supplementary proceedings which are fairly adequate"

and then draws what I would regard as a curious distinction between state procedural rules "peculiarly applicable" to garnishment proceedings and those of "general application," implying that only in the latter case do the Federal Rules prevail over the state rules. Professor Moore draws no such distinction, and I see no justification for the majority's perpetuation of it by characterizing Fla. R.Civ.P. 1.3(c) as "not a rule peculiarly applicable to service of writs of garnishment." Besides, the starting point is not Fla.Rule 1.3(c) but Fla.Stat.Ann. § 77.05, note 7, supra, which is a provision peculiarly applicable to garnishment in spite of the fact that it refers to the manner in which summons is served in any civil action.

12. Of course, there was no occasion for such a holding since personal service of the answer pursuant to the Kansas statute would also suffice under Rule 5(b) which alternatively provides delivery by mail or in person.

13. Had the materials discussed by me been presented to the District Judge, I am confident that the service would never have been quashed. The look at the books was both too late and by the wrong person.

14. This case goes much further than we need go here. In a situation where personal rather than substituted service was required, the District Court approved service of a garnishment writ pursuant to the liberal Minnesota rule which allows service by any person not a party. Although this case was decided prior to the Tenth Circuit decisions, Professor Wright makes the following comment on it:

"It is doubtful that Rule 64 requires the federal court to yield to state procedural provisions as to provisional remedies, but the court, in the case cited, seems right in holding that service, though not by a United States Marshal, was valid where garnishee did not deny that personal service had been effected."

1 Barron & Holtzoff, Federal Practice and Procedure § 177, at 297 n. 39.1 (Wright rev. 1965 Pocket Part). Similarly, in this case the Insurance Company does not deny personal service upon the Insurance Commissioner nor compliance with § 624.-0222. Nor could it.

tary proceedings, I nevertheless would sustain the service in this case for the simple reason that 4(c) is not applicable.

To summarize, my argument runs as follows: Rule 69(a) demands that state procedure be followed except to the extent that 4(c) is applicable. Rule 4(e) provides that "[w]henever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons * * * upon a party not an inhabitant of or found within the state, * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule." [15] How can 4(c) and 4(e) be reconciled? The Courts and commentators agree that while 4(e) controls the manner of service, 4(c) prescribes who shall make the service if, and only if, the manner of service under 4(e), and thus state law, must be *personal*. If state law does not require personal service, if constructive or substituted service involving only posting, publishing, or mailing is provided for by state law, then 4(c) is inapplicable and the Marshal need play no part.[16]

15. Rule 4(d) provides:
"* * * Service shall be made as follows:
"* * * *
"(7) Upon a defendant of any class referred to in paragraph (1) or (3) [which includes domestic and foreign corporations] of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by * * * the law of the state in which the district court is held * * *."
Prior to 1963 there was some doubt whether under 4(d) (7) resort could be had to state statutes providing for constructive or substituted service on nonresidents (e. g., non-resident motorist, aircraft, and watercraft and other long-arm statutes). Rule 4(e) was expressly amended in 1963 to provide for resort to such state statutes. See 2 Moore, Federal Practice # #4.32 [1], 4.41–1. It is undisputed that the Insurance Company is a nonresident of Florida, and thus 4(e) applies. But whether 4(d) (7) (for residents) or 4(e) (for nonresidents) applies, since substituted service pursuant to state law is available under both, 1 Barron & Holtzoff. Federal Practice and Procedure § 171, at 647, § 179, at 716, the determination of the validity of service in federal actions depends on an appraisal by the Federal Court of the propriety of service under the applicable state statutes, 2 Moore # #4.22 [3], 4.32 [2]. And since the Florida procedure for service on an insurer is the same whether the insurer is domestic, foreign or alien, §§ 624.0221, 624.0222 (note 7, supra), the result under 4(d) (7) and 4(e) would be the same.

16. Of course, 4(c) to the extent it is applicable controls even where service is made pursuant to 4(d) (7) or 4(e) because these sections relate to the manner of service, not to the person making service. 1 Barron & Holtzoff § 176, at 657, § 182.1, at 728. But as Professor Moore explains:
"Rule 4(c) is subject to * * * [an] exception, not explicitly stated but which may be derived from the other provisions of Rule 4, as amended in 1963. Thus where service of original process is made on a party who is not an inhabitant of or found within the state in which the district court is held, under * * * a state statute or rule of court, as provided in Rule 4(e), the service may be made in the manner provided in such * * * state statute or rule, and this would implicitly include reference to the means of making service under the practice envisioned in such * * * state statute * * *.
2 Moore #4.08, at 1007. Then he explains:
"These [state] statutes and rules may call for substituted or constructive service such as personal service on the party outside the state, service by mail, service of notice by publication, or a combination of these forms, often coupled with service within the state on a state official, deemed by law to be the agent of the out-of-state party for the reception of service. * * * A question arising in the use of these statutes or rule in federal actions is: do they conflict with the requirement of Rule 4(c) * * *? Prior to 1963, the Second Circuit had held that Rule 4(d) (7) incorporated the state method of service into actions under the Federal Rules, and that Rule 4(c) was no barrier to service by mail on the out-of-state party under state practice. [Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, S.A., 2 Cir., 1957, 243 F.2d 342.]
"This conclusion was strengthened by the 1963 amendments to Rule 4. * * *

I have already made clear that Florida requires substituted service upon the Insurance Commissioner in this case. See note 7, supra. The problem then boils down to this: is personal service upon the Insurance Commissioner an essential element of the substituted service provided for in § 624.0222? Put in another way, would it have been enough under Florida law if the Insurance Commissioner received the writ of garnishment through the mail rather than from the hands of the sheriff? Although the Florida *Erie* lights are dim, an examination of Florida law and decisions from other jurisdictions leads me to the conclusion that, contrary to the assumption of the majority and even Appellant, personal service upon the Insurance Commissioner is not required.

Section 624.0222(1) provides that "[s]ervice of process upon the commissioner as process agent of the insurer (under § 642.0221) shall be made by serving copies in triplicate of the process upon the commissioner," but it does not indicate whether the Commissioner must be personally served, and I have found no Florida case touching on this question. There are, however, several considerations which militate against construing this section to require personal service in the awesome manner associated usually with that term.

First, is the fact that the section itself neither specifies personal or manual delivery nor refers to those provisions of Florida law, Fla.Stat.Ann. §§ 47.12, 47.13, which describe the method of personal service. Second, there are some analogous Florida provisions for substituted service which clearly do not require personal service upon the State official statutorily designated as the agent for service of process. Section 47.29 provides that the operation in Florida of a motor vehicle by a nonresident "shall be deemed equivalent to an appointment by him of the secretary of state of the State of Florida as his agent upon whom may be served all lawful processes in any action" growing out of a collision in the state. Prior to 1959, § 47.30 provided:

"Service of such process shall be made by leaving a copy of the process with a fee of two dollars in the hands of the secretary of state, or in his office, and such service shall be sufficient service upon a defendant who has appointed the secretary of state as his agent for the service of such process * * *." [17]

A Federal District Court sitting in Florida quashed a service under this provision where it appeared that the process had been mailed by registered mail to the secretary of state instead of having been personally served upon him. Gallant v. McKinney, S.D.Fla., 1952, 104 F.Supp. 277. See also Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., 5 Cir., 1964, 332 F.2d 135. In 1959, and perhaps as a result of the District Court's interpretation of this section, § 47.30 was amended to read:

"Service of such process shall be made by the plaintiff or his attorney by ei-

"Ideally, Rule 4(c) should have been amended * * * but it seems that the Advisory Committee did not deem such an amendment to Rule 4(c) necessary, and in its 1963 Note took the position that Rule 4(c) is not a limitation upon service under * * * state statutes * * *."

2 Moore #4.08, at 1009–11. The 1963 Note to Rule 4(d) (7), see 2 Moore #4.01 [19], at 931, clearly supports this view of 4(c)'s application to service made pursuant to 4(d) (7) or 4(e):

"Thus where the * * * state statute or rule, calls for a mode of service of original process other than by personal delivery to the party, the mode envisioned by the * * * state provision may be followed. If an aspect of the service called for * * * is by publication or by notice mailed by the plaintiff or his attorney, the marshal or a person specially appointed by the Court need play no part."

2 Moore #4.08, at 1011; *accord* 2 Moore #4.19, at 1072, #4.32 [2], at 1240 & n. 27.

17. This same provision applies to any nonresident person or corporation engaging in business in Florida, which engagement is also deemed the equivalent of appointment of the secretary of state as agent for service of process. Fla.Stat.Ann. § 47.16(1).

ther leaving a copy of the process with a fee of two dollars in the hands of the secretary of state, or in his office, or by mailing a copy of such process with a fee of two dollars to the secretary of state * * *."

Fla.Laws 1959, ch. 59–382, § 1. Thus, personal service upon the secretary of state is no longer necessary under the Florida provisions for substituted service of nonresident motorists and nonresidents engaging in business. There is no basis for assuming that Florida policy is any different as to § 624.0222. The Legislature's 1959 amendment of § 47.30 indicates a recognition of what I consider to be the third—and most important—reason why personal service is not required. I cannot express it better than in the words of the dissenting opinion in Hunstock v. Estate Dev. Corp., 1943, 22 Cal.2d 205, 138 P.2d 1, 148 A.L.R. 968, 974 (1944):

"The majority opinion holds that the delivery of the summons to the Secretary of State must be a personal one and not by mail. Indulgence in such technicality should not be permitted to thwart the ends of substantial justice. It must be remembered that the service involved is *substituted* service and not personal service. * * * Such service does not necessarily give the defendant personal notification of the action. * * * Jurisdiction is acquired if compliance is had with the statutory requirements, even though the defendant never in fact receives a copy of the summons. * * * The purpose of requiring personal delivery of a summons to a natural person is to leave no doubt that he receives notice of the action. In substituted service only a reasonable probability of that result is required. Hence, delivery by mail to the Secretary of State is

sufficient. To require personal delivery to the Secretary of State is contrary to the very nature of substituted service which rather than being personal service is a substitute therefor. It follows that when the Legislature established a method of substituted service it did not intend to require personal delivery of the summons to the Secretary of State." [18]

Though there are non-Florida judicial pronouncements to the contrary,[19] the decisions dispensing with the necessity for personal service upon the state official-statutory agent are in harmony with many other decisions of Florida courts which stress that substance rather than form is to determine the validity of substituted service of process.

Although the Florida courts appear to require strict and substantial compliance with the statutory provisions for substituted service, 25 Fla.Jur. Process § 23, several cases indicate that as long as the statutory steps essential to providing reasonable probability of notice have been taken, minor deviations from the technical requirements of the statutes do not invalidate the service. In Cherry v. Heffernan, 1938, 132 Fla. 386, 182 So. 427, service was made upon the Secretary of State pursuant to the nonresident motorist statute, and the Secretary of State forwarded a copy of the process by registered mail to the nonresident defendant. The Post Office, however, returned this letter marked "Refused," and the defendant contended that the service was deficient in absence of a signed return receipt. The Court quickly disposed of this contention:

"* * * [S]tatutes providing for * * * substituted service on nonresidents are in derogation of common rights and must be *strictly construed.* * * * the steps required to be taken

18. *Accord,* National Grocery Co. v. Kotzebue Fur & Trading Co., 1940, 3 Wash.2d 288, 100 P.2d 408; Long Island Ins. Co. v. Great Western Mfg. Co., 1895, 2 Kan. App. 377, 42 P. 738.

19. See, e. g., Grabner v. Willys Motor, Inc., 9 Cir., 1960, 282 F.2d 644, 86 A.L.R.

2d 994; Hunstock v. Estate Dev. Corp., supra; Harrigan Contracting Co. v. Columbia Ins. Co., 1913, 4 Boyce 454, 89 A. 210; Valentine v. Franklin Sur. Co., 1933, 11 N.J.Misc. 822, 168 A. 35. See generally Annot., 148 A.L.R. 975 (1944).

must be substantially complied with. It was never contemplated, however, that a nonresident could employ the terms of the act to defeat its purpose.

"The purpose of the act was to give the classes named therein notice of any action brought against them that they might submit themselves to the jurisdiction of the court and offer such defense as they may be advised. *It is shown here that the terms of the act in so far as giving notice was required were complied with to the letter."*

182 So. at 429. (Emphasis added.) Mitchell v. Brown, Fla.Dist.Ct.App., 1959, 114 So.2d 178, involved the propriety of service under Fla.Stat.Ann. § 47.25 which provides that an incompetent shall be served by delivering a copy of the summons to both the guardian and the incompetent. In this case both the incompetent and a person who happened to be his guardian were co-defendants, and both were served in their individual capacities. However, the guardian was not delivered a copy of the writ served on his incompetent as required by the statute. The Court upheld the service nonetheless. Noting that the purpose of § 47.25 was to provide notice to the guardian, the Court held there was no need to serve an additional copy of the summons on the guardian who had been served individually and thus had notice. See, e. g., H. Bell & Associates, Inc. v. Keasbey & Mattison Co., Fla.Dist.Ct.App., 1962, 140 So. 2d 125.

Though these strong Florida pronouncements compel the conclusion that where the terms of § 624.0222 "in so far as giving notice was required were complied with to the letter," it is a matter of indifference as to how the writ of garnishment arrived at the Commissioner's office, even assuming Florida would require personal service by the sheriff—which by application of 4(c) would be translated to personal service by the Marshal—can the Insurance Company object to the method of delivery if the Commissioner as its statutory agent has accepted the service, as he did here? The law provides that "process so served [on the Commissioner] shall be valid and binding upon the insurer," § 624.0221, and "shall *for all purposes* constitute valid and binding service * * * upon the insurer," § 624.0222(3) (emphasis added). Again, though there is no clear Florida precedent, "it is a well established general rule recognized in this state that acceptance of service is as effective as service of process on the defendant in personam," 25 Fla.Jur. Process § 17; see 72 C.J.S. Process § 38, citing McCord v. Smith, Fla., 1950, 43 So.2d 704. And, in many other jurisdictions it appears that acceptance of service by the statutory agent in cases of substituted service forecloses objections by the defendant to at least technical defects in the manner in which the agent was served. See, e. g., Sovereign Camp, W. O. W. v. Sadler, 1930, 42 Ga.App. 219, 155 S.E. 343; Coyle v. Interstate Business Men's Ins. Acc. Ass'n, 1925, 283 Pa. 372, 129 A. 227;[20] Appelbaum v. Star F. Ins. Co., 1906, 115 App.Div. 117, 100 N.Y.S. 747. See Generally Annot., 148 A.L.R. 975, 979.

I cannot believe that in the 20th Century in an atmosphere which aims the Rules at attaining substantial justice,

20. In holding that the acceptance of service by the state insurance commissioner was valid in an action against a foreign insurance company, under a statute similar to §§ 624.0221, 624.0222, the Pennsylvania Supreme Court said:

"The acceptance of service of the original writ, even after the return day named in it, was sufficient to bring defendant into court. Though at that time it could not have been validly served upon anyone, probably counsel would not deny—certainly he could not successfully do so—that, if defendant itself had then accepted service, it would have been in court for all the purposes of the case, despite the fact that the statutes in relation thereto * * * refer only to actual service, and not to acceptance of service. * * * That the service was accepted by the insurance commissioner, as defendants statutory 'attorney' or agent, results, as the statute says, in it being 'deemed [a] valid service upon the company.' "

F.R.Civ.P. 61, 28 U.S.C.A. § 2111, it matters whether the person, delivering the paper to the responsible well-run office of a high state official whose function is then to buy and lick a United States postage stamp, wears a blue suit rather than an open-range hat, displays the badge of a marshal rather than the badge of a sheriff. The writ is the thing. And the writ told the defendant what to do. Indeed, the writ told the defendant—through the voice of the Court, the District Clerk—that the Court was indifferent to the status of him who would leave the writ where it was left.

This new, fresh victory for meaningless formalism makes me again "hear a reformer's skeleton rattle." And again I "see scurrying about with their manifolds and foolscaps of exemplifications, bails, vouchers, replications, recordats, demurrers, and mittimus," the assorted "scriveners and clerks glorying that once again things legal must be done in due and proper order." O'Neal v. United States, 5 Cir., 1959, 264 F.2d 809, 814–815 (dissenting opinion).

Marvin Jones, Senior Judge, dissented.